**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NATHAN JOSEPH REIGLE,** | : | **CIVIL NO. 1:CV-11-0052** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **RALPH REISH, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

This civil rights action pursuant to 42 U.S.C. § 1983 was commenced by Nathan Joseph

Reigle ("Reigle") in the United States District Court for the Eastern District of Pennsylvania on

September 2, 2009.   At the time, Reigle was an inmate confined at the State Correctional

Institution at Chester, Pennsylvania, and proceeded pro se.  The case was transferred to this

Court on January 7, 2011.  While pending in the Eastern District, counsel was appointed and

Reigle was granted leave to file an amended complaint.  The amended complaint raises claims

under the First, Eighth and Fourteenth Amendments against employees at the Northumberland

County Prison ("NCP") during Reigle's confinement there.  These Defendants are as follows:

Ralph Reish, Warden; Mary Jo Christiano, Mental Health Counselor; Dr. Hynick; Nurse Patty

and Lieutenant James Smink.  Presently pending are motions to dismiss the amended complaint

filed by Defendant Hynick (Doc. No. 31) and Defendants Reish, Christiano and Smink (Doc. No.

40).  For the reasons that follow, the motions will be granted in part and denied in part.

I.    **Background**

**Procedural History**

On September 2, 2009, Reigle submitted his § 1983 complaint along with an application

to proceed in forma pauperis ("ifp") in the United States District Court for the Eastern District of

Pennsylvania.  Both documents were signed and dated August 24, 2009.  The Eastern District

Clerk of Court stamped the complaint as "Received Sep 02 2009," but only docketed the ifp

application on said date.  (Doc. No. 1.)  The ifp application was thereafter denied without

prejudice on October 6, 2009, and Reigle directed to submit proper ifp documents.  (Doc. No. 2.)

On November 30, 2009, Reigle's ifp application was approved, and the Clerk of Court was

directed to docket Reigle's previously submitted complaint.  (Doc. No. 4.)  The United States

Marshal was directed to serve the complaint.  Named as Defendants were the following NCP

employees:  Ralph Reish, Warden; Mary Jo Christiano, Mental Health Counselor; Dr. Hynick,

D.O.; Lieutenant Smink; Sergeant Tim Zorbe; Brian Whery, Security Officer; Shane Hoffman,

Maintenance Officer; and Jane Doe Nurses I and II.  (Doc. 5.)

  In the original complaint, Reigle alleged that while confined at NCP from January 12,

2007 through August 28, 2007, he was denied treatment for his medical, dental and psychiatric

conditions including MRSA, scabies, an abscessed tooth, severe depression, anxiety disorder and

suicidal traits.  He also claimed that he was subjected to retaliation on several occasions for

contacting an attorney about these issues.  The retaliation included being placed in medical

administrative custody for 51 days without any medical care, being placed in a cell for 7 days

without running water and with unsanitary conditions, the destruction of property and assault.

Reigle further alleges that when he was confined at NCP on a second occasion beginning on

April 15, 2008, he was again denied medical treatment for his mental issues through the time he

was transferred to a state correctional institution in June of 2008.

  Following the appointment of counsel on July 12, 2010, the Eastern District Court

granted Reigle leave to file an amended complaint in this action.  (Doc. Nos. 8, 11.)  On

September 7, 2010, an amended complaint was filed naming the following five (5) original

Defendants: Reish, Christiano, Hynick, Smink and "Nurse Patty." (Doc. No. 14.)  On January 7,

2011, the Eastern District granted an uncontested motion to transfer the matter to this Court on

the basis of improper venue. (Doc. No. 28.)  Pending are motions to dismiss the amended

complaint filed by Defendant Hynick (Doc. No. 31) and Defendants Christiano, Reish and

Smink (Doc. No. 40).[1]  The motions are fully briefed.

### Allegations in Amended Complaint

### A.      Psychiatric Condition

Reigle states that he was first incarcerated at NCP from January 12, 2007 through August

28, 2007.   Following his release, he was again confined there from April 15, 2008 until June of

2008, following a violation of parole.  Reigle states that he suffers from conditions including

severe depression, anxiety, panic attacks and suicidal ideations.  Between 1995 and his initial

confinement at NCP in 2007, he states he received in-patient treatment nine (9) times and was

treated by Dr. Miller, who prescribed medications including Wellbutrin and Xanax.

Upon his arrival at NCP on January 12, 2007, Reigle informed Defendant Hynick of his

---

[1]  It does not appear that Defendant Nurse Patty has never been served with the complaint in this action.  She was originally designated in the original complaint as a "Jane Doe Nurse." Thereafter, in the amended complaint she was identified as "Nurse Patty."  It appears that in the summons she was subsequently identified as "Nurse Patty Wosniak."  When the executed summons was filed with the Court, it indicates that Wosniak was personally served at NCP to the extent that "M. Shelinsky" signed for the complaint on Wosniak's behalf.  (Doc. No. 21.) However, it is noted by the Marshal's Service that Wosniak was not employed at NCP at the time of service.  Rather, she was employed at the time in the Medical Department at SCI-Coal Township.  As such, it does not appear that said Defendant has properly been served with the amended complaint in this action.  The docket reveals that no appearance of counsel has been entered on her behalf, and she is not a part of either motion to dismiss presently pending before the Court.

condition and medications, but alleges Hynick refused to treat him in any manner.  Reigle

thereafter requested Miller to fax his medical information to Hynick, and believes he did so.

When Reigle attempted to discuss the matter with Hynick, Nurse Patty would not allow it.

Eventually Reigle was able to speak with Hynick, but he still refused to provide him with

treatment for his psychiatric condition.

Reigle approached Defendant Christiano about Hynick's behavior and his need for

medical care.  Christiano initially ignored him, but later told Reigle he would need to obtain

approval from Warden Reish.  As a result, Reigle sent written requests to Reish detailing his

psychiatric condition and treatment and Hynick's refusal to provide treatment.  Although he

requested Reish's help, Reigle  received no response to his requests.  Reigle also claims that

Reish placed him in Medical Administrative Holding for 51 days where he received no

medication whatsoever in retaliation for submitting repeated requests for medical care.

Due to the lack of medical treatment received and the abrupt discontinuation of his

medications, Reigle claims his condition worsened and he suffered withdrawal in the form of

seizures and nausea.  After being confined at NCP for three months under these circumstances,

Reigle contacted an attorney whom he believes thereafter contacted Defendant Reish.  It was

only at this point when Hynick finally prescribed medication to treat his psychiatric condition in

the form of a low dosage of Wellbutrin.  Reigle complains that the dosage was inadequate to

address his condition.

On August 27, 2007, Reigle was released from NCP.  Approximately 1-2 weeks later, he

was admitted to the York Hospital for treatment related to a physical problem.  He informed the

staff of his deteriorating psychiatric condition, and was evaluated by psychiatrists who

prescribed medications including Risperdal.  Riegle claims that he continues to suffer from the effects of being denied all medication for 3 months while at NCP, and thereafter being provided inadequate treatment the remainder of his time there.

On April 15, 2008, Reigle was confined at NCP a second time.  He claims that Hynick again refused to provide him with psychiatric treatment and care.  He alleges that his outside doctor (Miller) again faxed information to Hynick with respect to his condition/medications, but Hynick refused to treat him.  Nurse Patty initially refused to allow Reigle to speak with Hynick, but eventually Reigle was able to do so.  Hynick again refused to provide him with treatment. Reigle filed a written request with Christiano about these issues, but Christiano refused to speak with him.  Reigle also sent written requests to Warden Reish about Hynick's conduct, but Reish failed to respond.  These events took place from April of 2008 until Reigle's transfer to SCI-Camp Hill in or about June of 2008.

**B.**    **Dental Care**

Reigle also sets forth claims regarding the denial of dental care.  Upon his first incarceration at NCP, he was suffering from an abscessed tooth.  He informed Nurse Patty and Dr. Hynick that he had scheduled an appointment to treat the tooth prior to his incarceration.  It is Reigle's belief that NCP has no dentist on staff, and that inmates must be placed on a waiting list to see an outside dentist.  He claims that Hynick refused to allow him to see a dentist or provide dental care/treatment during the entire first period of his incarceration at NCP (1/12/07-8/28/07).  Written requests to Reish informing him of the need for dental care and Hynick's refusal to provide care went unanswered.  As a result, Reigle experienced extreme pain and the swelling of his face and neck.

5

Following his release from NCP in August of 2007, Reigle was admitted to Geisinger Medical Center in Danville, Pennsylvania, for problems related to his dental health.  He does not specify the date he was admitted.  He was diagnosed with cellulitis of the face.  Maxillofacial surgery was performed to remove the abscessed tooth, and to repair his sinus cavity that was damaged as a result of the tooth.  Reigle alleges that he still experiences sinus problems, pain in his cheek and eye, and problems with his adjacent teeth due to Defendants' denial of dental care.

### C.  General Medical Care

Reigle also alleges that during his first period of incarceration at NCP he contracted what he later learned was Methicillin resistant Staphylococcus aureus ("MRSA").  According to Reigle, he had a pimple above his hair line that became extremely painful.  He then began to experience symptoms including sweating, itchiness, hair, weight, appetite and energy loss, extreme fatigue,  weakness and nausea.  He informed Nurse Patty of these symptoms, but she refused to allow him to see Dr. Hynick.  Subsequent thereto, when Reigle was able to speak with Hynick, Hynick  refused to provide him with appropriate treatment.  During this same time period, Reigle contracted scabies which Hynick also refused to treat.  Requests sent by Reigle to Warden Reish about these matters went unanswered.  An inquiry made to Reish on Reigle's behalf by an attorney also received no response.

Following his release from his first period of incarceration at NCP, Reigle was admitted to York Hospital where it was found that MRSA had infiltrated his entire body.  He does not indicate the date upon which this occurred.  While there, he was also treated for scabies.  Reigle spent a week in the hospital.  He claims that due to Defendants' actions, his life was placed at

6

risk due to the lack of treatment at NCP.

### D.    Retaliation

During his first period of confinement at NCP, Reigle also alleges he was subjected to several instances of retaliation in response to his persistent complaints, and his efforts to obtain the assistance of counsel to resolve the lack of medical care.  He alleges that Reish retaliated by causing him to be placed in Medical Administrative Holding for 51 days where he received no medical treatment whatsoever.[2]  He further alleges that Defendant Smink retaliated against him by entering his cell and spraying mace into his nose while he was sleeping.  Reigle also maintains that Reish and Smink caused him to be moved into a cell on July 7, 2007 for a period of one week that had no air conditioning, ventilation or running water and was covered in urine and feces.  According to Reigle, this conduct took place during exceptionally hot weather and caused him to experience fatigue, nausea, dizziness and headaches.  Reigle asserts that this move occurred one day after his attorney visited NCP in an attempt to speak with Reish about Reigle's complaints.  During the move into this cell, Smink is alleged to have destroyed Reigle's property,  including his legal documents.

Based on the foregoing, Reigle contends that Defendants violated his rights under the First, Eighth and Fourteenth Amendments.  As relief he seeks nominal, compensatory and punitive damages, as well as attorney's fees and costs.

## II.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an

---

[2]  In the body of the amended complaint, Reigle only alleges this claim against Warden Reish.  In the setting forth specific counts at the end of his complaint, Reigle appears to also allege this claim against Hynick.  (Doc. No. 14 at 10, 12.)

action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded

allegations in the complaint as true and viewing them in the light most favorable to the plaintiff,

a court finds that plaintiff's claims lack facial plausibility. <u>Bell Atlantic Corp. v. Twombly</u>, 550

U.S. 544, 555-56 (2007). This requires a plaintiff to plead "sufficient factual matter to show that

the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the

defendant is liable for [the] misconduct alleged." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203,

210 (3d Cir. 2009) (internal quotation marks and citation omitted). "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting

<u>Twombly</u>, 550 U.S. at 556). If a party does not "nudge[] [his] claims across the line from

conceivable to plausible, [his] complaint must be dismissed." <u>Twombly</u>, 550 U.S. at 570.

"[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal

conclusion couched as a factual allegation.'" <u>Id.</u> at 554-55 (citation omitted). After <u>Twombly</u>

and <u>Ashcroft</u>, "conclusory or bare-bones allegations will no longer survive a motion to dismiss:

threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." <u>Fowler</u>, 578 F.3d at 210 (internal quotation marks and citation

omitted). While the complaint "does not need detailed factual allegations . . . a formulaic

recitation of a cause of action's elements will not do." <u>Twombly</u>, 550 U.S. at 555.

## III.    Discussion

### A.    Defendant Hynick's Motion to Dismiss

Hynick sets forth two arguments in support of his motion to dismiss the amended

complaint.  He first maintains that the amended complaint is barred by the statute of limitations.

He next argues that Reigle fails to state a claim against him for deliberate indifference to a

serious medical need.

### 1.      Statute of Limitations

Section 1983 claims are subject to the state's statute of limitations for personal injury

actions.  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).  In Pennsylvania, the limitations period

is two years.  42 Pa. Cons. Stat. § 5524.  The limitations period begins to run when the plaintiff

knows or has reason to know of the injury upon which the cause of action is based, unless some

exception tolls the running of the limitations period.  See Sameric Corp. of Delaware, Inc. v.

City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).  Though a statute of limitations defense

generally cannot be raised by way of a 12(b)(6) motion, an exception known as the "Third

Circuit Rule" permits this when the statute of limitations bar is apparent on the face of the

complaint.  Mumma v. High-Spec, Inc., 400 F. App'x 629, 631 (3d Cir. 2010); Benak ex rel.

Alliance Premier Growth Fund v. Alliance Capital Management L.P., 435 F.3d 396, 400 n.14 (3d

Cir. 2006).

Hynick contends that the two year statute of limitations bars all of Reigle's claims that

arose during his first period of incarceration at NCP (1/12/07 through 8/27/07) because he did

not file his complaint until September 2, 2009.  Because these claims arose prior to Reigle's

release on August 27, 2007, which is more than two years before the date the complaint was filed

on September 2, 2009, Hynick maintains the claims are barred.

Hynick further contends that any claims set forth against him arising during his second

period of incarceration at NCP (April 15, 2008 - June, 2008) are also untimely.  He bases his

argument on Reigle's failure to allege any claims against him in the original complaint, thereby making any claims first appearing against him in the amended complaint untimely.  Hynick argues that he is only named in the caption of the original complaint, and thereafter merely identified as the doctor at NCP.   He contends that Reigle fails to set forth any claims against him in the original complaint, and first sets forth claims against him in the amended complaint filed on September 7, 2010.  Because the amended complaint was filed more than two years after the claims are alleged to have occurred during Reigle's second period of incarceration from April 15, 2008 through June of 2008, Hynick argues such claims are untimely.  For the reasons that follow, the Court finds that all Eighth Amendment psychiatric care claims occurring up until August 24, 2007 are barred by the statute of limitations.  Also barred is Reigle's retaliation claim against Hynick.  At this juncture, however, the Eighth Amendment medical claims with respect to psychiatric care from August 24, 2007 forward, and all Eighth Amendment claims with respect to dental care, MRSA and scabies will not be dismissed on the basis of statute of limitations.

While Hynick considers the original complaint as filed on September 2, 2009, Reigle relies on the prison mailbox rule to argue that the complaint is deemed filed on August 24, 2009, the date it was signed and dated.  In Houston v. Lack, 487 U.S. 266, 271-75 (1988), the United States Supreme Court established that a prisoner's complaint is deemed filed at the time it is given to prison officials for mailing to the Court.  The "mailbox rule" resulted from the Court's concern that prisoners had no choice but to rely upon prison authorities for the filing of their legal papers.  Id. at 275.  The Court in Houston also noted that if a question regarding timeliness of a filing date arises, a prisoner would not likely be able to establish that prison staff were

responsible for any delays in the filing of such papers.  Id. at 271, 275.  Pursuant to the standards

announced in Houston, Reigle's complaint will be deemed filed as of August 24, 2009.[3]

Utilizing August 24, 2009 as the date of filing of this action, there remains the question

of whether the amended complaint presents claims that are timely.  Hynick would argue that any

claims arising prior to August 24, 2007 would be barred.  Reigle opposes any such finding that

the claims arising during his first period of incarceration prior to August 24, 2007 are untimely.

He maintains that any statute of limitations issue cannot be resolved at this stage of the

proceedings due to the possible applicability of equitable tolling,  the "discovery rule" and the

"continuing violation" doctrine.  Because specific dates relevant to a determination of the

applicability of these principles are not apparent from the face of the complaint, Reigle argues

that a dismissal of his claims on the basis of statute of limitations is inappropriate in response to

Hynick's motion to dismiss.

Equitable tolling acts to stop a period of limitations from running where a claimant's

accrual date has already run.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387

(3d Cir. 1994) (citation omitted).  There are three principal situations where equitable tolling

may be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the

plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented

from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights

---

[3]  The Court also notes that the facts that the ifp was docketed on September 2, 2009 and the original complaint was not docketed until November 30, 2009 is of no consequence.  A complaint is deemed constructively filed as of the date the clerk received the complaint, even if it is not formally filed until the fee requirement is ultimately met.  See McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996);  Dasilva v. Sheriff's Department, 413 F. App'x 498, 502 (3d Cir. 2011).

mistakenly in the wrong forum." Id. (citation omitted).  Courts are mindful, however, that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances." Wallace v. Kato, 549 U.S. 384, 396 (2007).

In seeking equitable tolling, Reigle maintains that he did not learn facts with respect to his present claims including the nature of his medical conditions, the causes and effects thereof and the effects of Hynick's refusal to provide medical treatment, until after the first period of his incarceration ended – a date not apparent from the face of the complaint. Specifically, it was not until after subsequent hospitalizations on dates not apparent in the complaint, that he obtained information necessary to learn the basis of his claims against Hynick and permit him to file this action.

Under the discovery rule, a § 1983 claim accrues when "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991) (citation omitted). "The 'polestar' of the discovery rule is not the plaintiff's actual knowledge, but rather 'whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff.'" Id. at 925 (quoting O'Brien v. Eli Lilly & Co., 668 F.2d 704, 711 (3d Cir. 1981)).

The continuing violation doctrine is an "equitable exception to the timely filing requirement." West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995).  "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).  However, it is

well settled that the continuing violations doctrine "will not stop the ticking of the limitations clock . . . [once] plaintiff obtained requisite information [to state a claim].  On discovering an injury and its cause, a claimant must choose to sue or forego that remedy."  Barnes v. Am. Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F.2d 356, 360 (3d Cir. 1986)); see also Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001).[4]

---

[4] In each of the pending motions to dismiss, Defendants argue that the Third Circuit Court of Appeals does not apply the continuing violations doctrine in § 1983 cases outside of the employment discrimination context.  In support of their argument, they rely on a non-precedential opinion issued by the Third Circuit, as well as the Middle District of Pennsylvania. See Hunt v. Pa. Dep't of Corrections, 289 F. App'x 507 (3d Cir. 2008); Young v. Beard, No. 3:CV-07-2266, 2009 WL 3111736 (M.D. Pa. Sept. 23, 2009).  In response thereto, Plaintiff cites to non-precedential cases wherein this Court has not only acknowledged the application of the continuing violation doctrine to inmate actions filed pursuant to § 1983 but also found a continuing violation to exist under the facts of the case.  See Tripp v. Commonwealth of Pennsylvania, No. 05-CV-1227, 2005 WL 3132317, at *2 (M.D. Pa. Nov. 22, 2005); Gonzalez v. Nash, No. CIV. 3:CV-04-668, 2005 WL 2335125, at *4-5 (M.D. Pa. Sept. 22, 2005).

Although the continuing violation theory is typically seen in the discrimination context, the Third Circuit has considered the theory with respect to various § 1983 claims.  In Cowell, the Third Circuit applied the theory in a § 1983 civil rights action filed by a real estate company against a township but found no continuing violation under the specific facts of the case.  263 F.3d 286 (3d Cir. 2001).  In O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006), the court found that the continuing violation theory did not toll the two-year limitations period of police officer's § 1983 claims where allegations in the complaint were discrete, and each gave rise to a cause of action at the time it occurred.

There have been no precedential Third Circuit or United States Supreme Court cases holding that the continuing violation doctrine does not apply in the § 1983 context, or more specifically, to inmate actions filed pursuant to § 1983.  However, there exist numerous non-precedential Third Circuit and district court cases acknowledging the application of the continuing violation doctrine in not only the § 1983 context, but also with respect to inmate actions filed pursuant to § 1983.  See Greer v. Diguglielmo, 348 F. App'x 702 (3d Cir. 2009); Ozoroski v. Maue, No. 1:08-CV-0082, 2011 WL 1304603 (M.D. Pa. Mar. 31, 2011); Williams v. Beard, No. 4:08-CV-0044, 2011 WL 1343141 (M.D. Pa. Mar. 30, 2011); Heilman v. T.W. Ponessa and Assoc., No. 08-1667, 2009 WL 82707 (3d Cir. Jan 14, 2009).  In each of these cases, the courts conducted a statute of limitations inquiry and applied the continuing violation doctrine, even if no continuing violation may have ultimately been found to exist under the specific facts of the case.  This Court is more persuaded by this line of cases and finds that the

In considering these principles in light of the facts alleged in the complaint, the Court finds that the record is not yet developed enough to ascertain when Reigle could have discovered the facts giving rise to his Eighth Amendment medical claims concerning the denial of dental treatment and the lack of medical care for scabies and what he later learned to be MRSA. As such, the dismissal of these claims on the basis of statute of limitations would be inappropriate at this juncture. Based on the current record, the Court is unable to determine when Hynick's conduct triggered an awareness on Reigle's part and his duty to assert his rights with respect to these claims. However, the Court finds that the Eighth Amendment claim with respect to the denial of psychiatric care during Reigle's first period of incarceration up until August 24, 2007, and any retaliation claim against Hynick during that same time period are untimely.[5] With respect to the first period of incarceration, at this juncture Reigle's claims with respect to inadequate medical care for his psychiatric condition from August 24, 2007 forward and all Eighth Amendment medical care claims with respect to the denial of care for Reigle's abscessed tooth, MRSA and scabies conditions will be permitted to proceed.

Hynick also takes the position that all claims arising against him during the second period of incarceration are untimely because Reigle failed to allege any cause of action against him in

_____

continuing violation doctrine can be applicable in actions filed under § 1983 by inmates.

   [5] Between January 12, 2007 and April of 2007, Reigle was aware of his psychiatric condition and his need to be on certain medications for said condition. He also was aware of the consequences of not receiving the medications in that during this same time period he experienced symptoms of withdrawal. Based upon the face of the complaint, it cannot be argued that Reigle was unaware of his injuries at the time they occurred. With respect to any claim of retaliation Reigle attempts to raise against Hynick for any involvement in his placement in Administrative Medical Holding at some point between January and April of 2007, he was also aware of the injury or wrongdoing when it occurred, and as such, this claim would also be barred.

14

the original complaint.  He states that he is only referred to in the caption of the original complaint, and thereafter only identified in the body thereof.   According to Hynick, it is not until submission of the amended complaint on September 7, 2009 when claims are set forth against him.  He argues, however, that this is two years after his second confinement ended at NCP.

While it is true that the amended complaint was not filed until September 7, 2010, the claims raised therein are considered timely if they "relate back" to the date of the original pleading.  Federal Rule of Civil Procedure 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when: the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out - or attempted to be set out - in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  The rationale behind this rule is that "a party is not entitled to the protection of the statute of limitations based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in the timely filed original pleading."  Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004).  Amendments that restate a claim brought in the original complaint "with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction, or occurrence in the preceding pleading" should therefore be permitted to relate back.  Id. (citing Clipper Express v. Rocky Mt. Motor Tariff Bureau, Inc., 690 F.2d 1240, 1259 n.29 (9th Cir. 1982)).  Accordingly, making this determination involves reviewing the two pleadings to search for a common core of operative facts such that "the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds."  Id. (citing Michelsen v. Penney, 135 F.2d 409, 416-17 (2d Cir. 1943)).

Without unnecessary elaboration, after reviewing the claims set forth in both the original and amended complaints, it is evident that both submissions are based upon the same common core of operative facts and pertain to the same categories of alleged wrongful conduct. The amended complaint basically reasserts those same claims, but does so with the aid of appointed counsel and with greater detail and clarity. As such, the amended complaint would relate back to a timely original complaint. While Defendant argues that Reigle did not allege any causes of action against him in the original complaint, the Court disagrees. Hynick is named in the caption and identified in the complaint as the doctor at NCP. While Reigle may not have identified him by name throughout the complaint when setting forth his Eighth Amendment medical claims, he does at one point specifically state that the "Dr refused to treat as MRSA or check for it as MRSA . . . ." (Doc. No. 5 at 6.) Reading the allegations in the complaint as a whole in the light most favorable to Plaintiff, it can reasonably be inferred that the Eighth Amendment medical care allegations are directed at Hynick. As such, the Court finds that the Eighth Amendment claims alleged against Hynick occurring from April 15, 2008 until his transfer from NCP in June of 2008 to be timely.

> **2.      Eighth Amendment Deliberate Indifference Claims**

Defendant Hynick also moves to dismiss the complaint on the basis that Reigle fails to allege sufficient factual averments to establish "but for" causation based on Hynick's actions or omissions. The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192,197 (3d Cir.1999) (citation omitted). In order to establish a violation based on the Eighth Amendment, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate

deliberate indifference to that need." <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). The "deliberate indifference" standard is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Id</u>. at 842. Only egregious acts or omissions can violate this standard. <u>See</u> <u>White v. Napoleon</u>, 897 F.2d 103, 108-09 (3d Cir. 1990). To sufficiently plead causation for a deliberate indifference claim based on an alleged failure to treat, a plaintiff must demonstrate a causal connection between the defendant's action and the specific deprivation of constitutional rights at issue. <u>Hetzel v. Swartz</u>, 909 F. Supp. 261, 264 (M.D. Pa. 1995).

In the instant case, Reigle alleges that Hynick was aware of his serious medical needs yet wrongfully delayed and withheld treatment and care resulting in pain, discomfort and the worsening of his medical conditions. He alleges that the harm resulting to him for the lack of medical and dental care included a worsening of his psychiatric condition, the cellulitus in his face and sinus complications requiring maxifacial surgery, and the life-threatening MRSA that

infiltrated his body.  Reading these allegations in the light most favorable to Reigle, the Court

finds that he had adequately set forth causation, and the motion to dismiss the complaint on this

basis will be denied.

### B.  Motion to Dismiss filed by Defendants Reish, Christiano and Smink

Also before the Court is the motion to dismiss the amended complaint filed by

Defendants Reish, Christiano and Smink.  They seek dismissal of all claims against them arising

during the first period of incarceration and all claims set forth against Defendant Smink as barred

by the statute of limitations.  With respect to claims that occurred during the second period of

incarceration at NCP, Defendants maintain that Reigle fails to allege any specific damages, state

an Eighth Amendment medical claim or set forth facts supporting an award of punitive damages.

### 1.        Statute of Limitations

For the most part, Defendants' statute of limitations arguments mirror those set forth by

Defendant Hynick.  For all of the reasons previously set forth, the Court finds that the Eighth

Amendment medical claims raised against Defendants Christiano and Reish during the first

period of incarceration with respect to the denial of psychiatric care are untimely.[6]  All claims of

retaliation set forth against Reish and Smink are also barred by the statute of limitations for the

reasons discussed above.  Because only retaliation claims are set forth against Smink, he will be

dismissed from this action.

The Eighth Amendment medical claims set forth against Reish with respect to Reigle's

---

[6]  While the Court found that the psychiatric care claims against Hynick occurring from
August 24, 2007 forward were not barred, Reigle does not assert any such claims against
Christiano and Reish post-April of 2007.

dental, MRSA and scabies issues will not be dismissed as untimely at this juncture.[7]  While the

Court agrees with Defendants that Reigle knew he was in need of care for his dental/medical

conditions, by failing to provide such care and/or preventing him from obtaining such care

Reigle was unaware of his injuries until a later date not apparent from the face of the complaint.

It is unclear at what point Plaintiff understood the consequences of the lack of treatment he

claims Defendant was responsible for providing to him.  Also proceeding will be the Eighth

Amendment psychiatric claims set forth against Christiano and Reish during the second period of

incarceration.  These claims are clearly timely in that they occurred between April and June of

2008.

### 2.      Pleading of Damages

Defendants argue that Reigle has failed to plead any damages resulting from the claims

arising during the second period of incarceration.  Without unnecessary elaboration, in reading

the amended complaint as a whole, the Court will not dismiss the claims raised during the second

period of incarceration for failure to plead specific damages.  The specific damages alleged for

the identical conduct occurring during the first period of incarceration in conjunction with

Reigle's allegation in paragraph 101 of the amended complaint that he suffered extreme

physical, mental and emotional harm is adequate to set forth a claim of damages for conduct

occurring during the second period of incarceration.  (Doc. No. 14 at 11.)

### 3.      Eighth Amendment Deliberate Indifference Claims

In seeking to dismiss the amended complaint Defendants next maintain that Reigle fails

to state a claim of deliberate indifference against them.  Since Defendant Smink has been

---

[7]  In the amended complaint, Reigle does not allege these claims against Christiano.

dismissed from this action, the Court's focus is on the claims set forth against Defendants Reish

and Christiano.  Said Defendants argue that it was not their place as Warden or Counselor to

second guess the care prescribed by Hynick.  They claim that neither of them was in a position to

diagnose or treat any alleged mental illness.  They further maintain that Reigle did not display

any objective signs of mental illness or suffering with respect to the denial of psychiatric care

during his second period of incarceration.  As such, they argue that their conduct in deferring to

Hynick does not demonstrate deliberate indifference.

The standard for evaluating an Eighth Amendment medical care claim has previously

been set forth.  To the extent Reigle seeks to hold Defendants responsible for misconduct of

subordinate officials, the amended complaint fails to state a claim in that respondeat superior is

not actionable in a § 1983 action.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir.

1988).  However, read in the light most favorable to Reigle, the Court finds that the allegations

set forth in the amended complaint are not based solely on supervisory liability.

"Absent a reason to believe (or actual knowledge) that prison doctors or their assistants

are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be

chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  Spruill

v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).  In the instant case, Reigle alleges that Warden Reish

and Counselor Christiano were aware of his serious medical needs and deliberately indifferent to

them.  Reigle discussed his psychiatric condition during the second period of incarceration at

NCP with Christiano and informed her of his need for medication, the faxes sent from his outside

doctor and Hynick's refusal to provide care.   (Doc. No. 14 ¶ 50.)  According to Reigle,

Christiano did nothing.  Thereafter, Christiano told Reigle to seek Reish's assistance.  When

Reigle informed Reish in writing of his need for treatment and Hynick's refusal to provide it, Reish did nothing.  (<u>Id</u>. ¶¶ 52, 53.)

Reigle similarly alleges that he informed Reish by written requests of his conditions resulting from his abscessed tooth and what he later learned to be MRSA, and sough his help in obtaining medical treatment that Hynick refused to provide.  (<u>Id</u>. ¶¶ 63, 78.)  Reish failed to respond to these requests.  (<u>Id</u>. ¶¶ 64, 79.)  He further alleges that Reish failed to respond following being contacted by Reigle's attorney.  (<u>Id</u>. ¶ 80.)  Based on these allegations that Reish and Christiano were aware of allegedly untreated serious medical needs but failed to take any action, Reigle's claims are cognizable and will not be dismissed.  <u>See</u> <u>Gravley v. Tretinik</u>, 414 F. App'x 391, 394 (3d Cir. 2011) (finding inmate stated a viable claim where allege prison administrator failed to act on written complaint that he was not being treated for serious medical condition).

### 4.    Demand for Punitive Damages

Punitive damages in Section 1983 cases are available where defendants have acted with a "reckless or callous disregard of, or indifference to, the rights or safety of others."  <u>Nykiel v. Borough of Sharpsburg</u>, 2011 WL 869141, at *14 (W.D. Pa. Mar. 9, 2011) (citing <u>Savarese v. Agriss</u>, 883 F.2d 1194, 1204 (3d Cir. 1989)).  The trier of fact must find "reckless, callous, intentional or malicious conduct" to award punitive damages.  <u>Springer v. Henry</u>, 435 F.3d 268, 281 (3d Cir. 2006).

The standard for demonstrating deliberate indifference to a serious medical need is extremely high.  However, Defendants' motion to dismiss the deliberate indifference claims has been denied.  Thus, it is clearly possible that if this burden is found to be met, a trier of fact

could assess punitive damages. For these reasons, Defendants' motion to dismiss Reigle's

demand for punitive damages will be denied at this stage.  <u>See</u> <u>Walker v. Brooks</u>, No. 07-280,

2009 WL 3183051, at *9 (W.D. Pa. Sept. 30, 2009).  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **NATHAN JOSEPH REIGLE,** | : | **CIVIL NO. 1:CV-11-0052** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **RALPH REISH, et al.,** | : | |
| **Defendants** | : | |


## <u>ORDER</u>

   **AND NOW**, this 3rd  day of October, 2011, in accordance with the attached

Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.      Defendant Hynick's motion to dismiss (Doc. No. 31) is **granted in part and
        denied in part**.  The motion is **granted** to the extent that all Eighth Amendment
        medical care claims for the denial of psychiatric care up until August 24, 2007 are
        dismissed as barred by the statute of limitations.  The motion is further **granted** in
        that the retaliation claim against Hynick is also dismissed as barred by the statute
        of limitations.  The motion is **denied** in all other respects.

2.      The motion to dismiss filed by Defendants Reish, Christiano and Smink (Doc.
        No. 40) is **granted in part and denied in part**.  The motion is **granted** in that the
        Eighth Amendment medical claims raised against Christiano and Reish during the
        first period of incarceration with respect to the denial of psychiatric care are
        dismissed as barred by the statute of limitations.  The motion is further **granted** in
        that all claims of retaliation set forth against Defendants Reish and Smink are also
        dismissed as barred by the statute of limitations.  The motion is **denied** in all
        other respects.

3.      Defendant Smink is **dismissed from this action**.

4.      Within twenty (20) days from the date of this order, Defendants shall file an
        answer to the claims remaining in this action.


                        S/ Yvette Kane
                        YVETTE KANE, Chief Judge
                        Middle District of Pennsylvania